Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom (#17244)
Amelia M. Fenn (#17210)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| RAND BRIEM and VERA BRIEM, <br><br> Plaintiffs, <br><br> vs. <br><br> P. GENOVESSE, an Ogden City Police Officer; TAYLOR, Ogden City Police Officer; OGDEN CITY, by and through OGDEN CITY POLICE DEPARTMENT (OPD), <br><br> Defendants. | **COMPLAINT** <br><br> **&** <br><br> **Jury Demand** <br><br> Civil No. _____ <br><br> Judge _____ |

Plaintiffs complain and allege causes of action against Defendants as follows:

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Rand Briem seeks relief for excessive force used by Defendants in violation of his rights guaranteed under the United States Constitution, specifically the Fourth Amendment, as well as the Civil Rights Act of 1871, codified as 42 U.S.C. §1983

and §1988, and by the laws and the Constitution of the State of Utah. This action also seeks relief for Plaintiffs Rand and Vera Briem under the laws, statues, and Constitution of the State of Utah, specifically Article I, section 9. Plaintiffs seek compensatory and punitive damages; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and any further relief as this Court deems just or equitable.

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, particularly under the provisions of the Fourth Amendment of the Constitution of the United States, and 42 U.S.C. §§1983 and 1988.

2.      This action also arises under the Constitution of the State of Utah Article I, Section 9.

3.      This action seeks redress for violations of the civil rights laws of the United States due to excessive force, and jurisdiction is therefore invoked pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

4.      As to the State Constitutional claims, this Court's supplemental jurisdiction is invoked under 28 U.S.C. §1367.

5.      The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Northern Division. Venue is therefore proper under 28 U.S.C. §1391. Venue for the State claims is proper under 28 U.S.C. §1367.

6.      Plaintiff also seeks redress for violations of his rights secured by the Utah Constitution. This Court has supplemental jurisdiction over such claims under Article I, §9 of the Utah Constitution.

7.      Plaintiff is seeking damages under federal and state law pursuant to the claims for relief specified below.

8.      This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. §1988, and pursuant to the Court's inherent power under State law.

9.      This Court therefore has jurisdiction for trial of the above captioned matter.

## **PARTIES**

10.      Plaintiff **Rand Briem** is a citizen of the United States of America and is a resident of Weber County, State of Utah.

11.      Plaintiff **Vera Briem** is a citizen of the United States of America and is a resident of Weber County, State of Utah.

12.      Defendant **P. Genovesse** was, at all relevant times herein, an Officer with the Ogden City Police Department ("OPD"), a department of Ogden City, operating in the course and scope of his employment, and under the color of the laws of the State of Utah. Officer Genovesse's first name is currently unknown. Once known, Plaintiffs will amend the complaint to include his name.

13.      Defendant **Taylor** was, at all relevant times herein, an Officer with the OPD, a department of Ogden City, operating in the course and scope of his

employment, and under the color of the laws of the State of Utah. Officer Taylor's first name is currently unknown. Once known, Plaintiffs will amend this complaint to include his name.

14.     Defendant **Ogden City** is a political subdivision of the State of Utah. Ogden City has a law enforcement branch known as the Ogden City Police Department ("OPD") which is authorized to operate by Ogden City and the State of Utah. Ogden City funds and supervises the OPD and is legally responsible for the acts of its employee officers that are within the course and scope of their employment. Ogden City, through the actions of OPD Officers Genovesse and Taylor, is a "person" within the meaning of 42 U.S.C. §1983. Officers Genovesse and Taylor were at all times state actors.

## FACTUAL ALLEGATIONS

15.     The incident in question occurred on the evening of November 29, 2022, at 619 E. 21st St. in Ogden, Utah.

16.     Mr. Briem is a 78-year-old man, 5'7" tall, approximately 180 lbs., and has had open heart surgery and several stints inserted in his heart.

17.     Mrs. Briem is a 75-year-old woman, frail, and uses a cane to walk.

18.     The Briems own the single-family residence at 619 E. 21st St. in Ogden.  They sometimes spend time in a garage apartment behind the house.

19.     On the date of this incident, no foreclosure had been filed or recorded against the property on 619 E. 21st St.

20.     There was a Health Department placard regarding non-occupancy of the "basement" apartment on the front door of the main residence. Exhibit 1. Mr. and Mrs. Briem had been in the detached garage living area just prior to the incident.

21.     At the time of the incident, Mr. Briem and his wife were leaving to fulfill a volunteer assignment to lock the doors of their neighborhood church, where they regularly attend.

22.      At 7:19 pm on November 29, 2022, an anonymous person called the Ogden Police and apparently complained that there were "squatters" staying at a house west of the caller's apartment. The caller apparently stated that the house had been "foreclosed" and no one should be there.

23.     Officers Genovesse and Taylor drove to the Briem residence about 8:30 p.m. and did not see anyone on the property.

24.     Both Officers were wearing operating body cams.

25.     There were "No Trespassing" signs on the gate of the property and on the house which had been placed there by Mr. Briem.

26.     The Officers entered the property on foot and walked past the No Trespassing signs along the driveway towards the backyard.

27.     Unaware of the Officers' arrival, Mr. Briem began driving his vehicle down his driveway. Officer Genovesse waved and told him to stop.

28.     Mr. Briem stopped his vehicle and rolled his window partially down.

29.    A handicap placard was clearly visible hanging on the Plaintiffs' rearview mirror.

30.    Mr. Briem asked "What can I do for you, Sir?"

31.    Officer Genovesse asked Mr. Briem if this was his residence.

32.    Mr. Briem replied that it was his house and garage.

33.    Officer Genovesse responded that the police had received a complaint that this house had been "foreclosed" on.

34.    Mr. Briem replied that the house was not foreclosed on.

35.    Officer Genovesse asked Mr. Briem to wait, but did not explain why.

36.    Mr. Briem replied he needed to go.

37.    Mr. Briem moved the car forward slightly forward in the driveway but was again stopped by Officer Genovesse.

38.    Officer Genovesse said to him that he should not be there and told him he was trespassing on his own property.

39.    Officer Genovesse forcefully opened Mr. Briem's car door and ordered him to get out of the car.

40.    Mr. Briem complied and exited his vehicle.

41.    Mr. Briem again stated he had somewhere else to be.

42.    Mr. Briem asked Officer Genovesse if he was under arrest.

43.    The Officer replied that Mr. Briem was not under arrest, but was being "detained" for investigation.

44.    Mr. Briem again stated he was the owner of the property.

45.    Mrs. Briem got out of the car and approached the Officers telling them that her husband had been "ill."

46.    Officer Genovesse placed his hands on Ms. Briem pushing her out of the way. He instructed her to stay on the other side of the driveway.

47.    The Officers asked for Mr. Briem's license.

48.    Mr. Briem replied that he would "show" it to the Officers but would not "give" it to them.

49.    Mr. Briem then showed the Officers his driver's license, but Officer Genovesse forcefully and without warning grabbed the license out of Briem's hand.

50.    Mr. Briem intuitively reached to get the license back.

51.    Mr. Briem did not make any aggressive move toward the Officers or verbally threaten them in any way.

52.    Mr. Briem had no weapon.

53.    Officer Taylor grabbed Mr. Briem's right hand and Officer Genovesse grabbed his other hand.

54.    Mr. Briem had not committed a crime.

55.    Mr. Briem was not resisting or fleeing. In fact, he had been complying with the Officer's orders.

56.    The two Officers forcefully threw Mr. Briem against the wall of his house.

57.     After one to two seconds, the Officers forcefully took Mr. Briem to the ground of his driveway for no apparent reason.

58.     Mrs. Briem witnessed her husband being thrown to the ground and kept stating to the Officers that he was ill. Mrs. Briem cried out in terror out of concern for her husband.

59.     Officer Taylor falsely told Mr. Briem to stop grabbing him.

60.     Mr. Briem responded immediately each time that he was not grabbing him.

61.     The Officers handcuffed Mr. Briem while he was on the ground.

62.     Mrs. Briem cried out in terror "he is dead."  The Officers told her to back off or they would arrest her as well.

63.     While still on the ground Mr. Briem stated he could not breathe.

64.     When Mr. Briem was lifted off the ground, he had cuts and blood all over his face. Exhibit 2. There were clear blood spots on the ground of the driveway.

65.     Mr. Briem had several large bruises on his face and body. Exhibit 3.

66.     Mr. Briem asked the Officers if he could sit down. The Officers originally stated no, but later allowed him to sit.

67.     Mr. Briem was kept handcuffed and bleeding on the porch in 32-degree weather for approximately 30 minutes.

68.     Finally, the Officers removed the handcuffs and left a citation for Mr. Briem, falsely charging him with interference with a police officer.

69.     After she witnessed her husband forcefully thrown to the ground, Vera Briem panicked and ran to her local church building, a couple of buildings away.

70.     Mrs. Briem was worried about her husband because he had just been released from the hospital. She was traumatized and feared that Mr. Briem would die.

71.     EMS evaluated Mr. Briem after the incident.

72.     Mr. Briem's rotator cuff was torn, and he has received subsequent physical therapy. He continues to experience lasting physical and emotional damage from the incident.

73.     Mr. Briem may require future surgery to address physical damages.

74.     Vera Briem was very frightened by the experience and in distress over her husband's health and safety. She continues to suffer PTSD and emotional damage.

75.     Neither Officer had any justification for touching Mrs. Briem.

76.     It was illegal, unconstitutional, and otherwise improper to use force on a non-violent misdemeanant who is not threatening, not resisting, or not fleeing.

77.     The use of excessive force in forcefully taking down Mr. Briem in these circumstances violates the Fourth Amendment.

78.     The actions of the OPD Officers were willful, malicious, and reckless, and therefore punitive damages are justified.

**FIRST CAUSE OF ACTION**

*~ Excessive Force in Violation of the Fourth Amendment ~*
*Against Officers Genovesse and Taylor in their Individual Capacities.*
*Cognizable Under 42 U.S.C. §1983*

79.     Plaintiffs incorporate by reference all other paragraphs herein.

80.     The Supreme Court has outlined three factors to evaluate reasonableness of force under the Fourth Amendment: (1) the **severity of the crime** at issue; (2) whether the suspect poses an **immediate threat** to the safety of the officers or others; and (3) whether the suspect is actively **resisting arrest or attempting to evade** arrest by flight at the precise moment that force is used. *Graham v. Connor,* 490 U.S. 386 (1989) (emphasis added).

81.     The proper focus in determining the reasonableness of the Officers' use of force is to analyze the events immediately confronting them when they use force.

82.      No use of force is reasonable when a suspect is fully subdued, is not resisting, is non-violent, and/or poses no threat to the officers or anyone else.

83.     Furthermore, the use of force is not permitted when there is no need or justification for its use.

84.     The right of a nonviolent misdemeanant to be free from a forceful takedown and excessive force is clearly established in the Tenth Circuit: "It is … clearly established law in the Tenth Circuit that the use of disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016).

85.    Mr. Briem did not commit a serious crime.

86.    Mr. Briem did not make any aggressive moves against the officers. At most, he intuitively reached for his license which Officer Genovesse had unreasonably swiped out of his hand without permission.

87.    Mr. Briem did not attempt to flee or resist arrest.

88.    Mr. Briem had no weapon.

89.    Officer Taylor and Officer Genovesse detained and arrested Mr. Briem by throwing him against the wall of his house and then forcefully taking him down to the ground.

90.    The two officers presented unreasonable and overwhelming force such that Mr. Briem would not have been able to flee or otherwise threaten them.

91.    An objectively reasonable officer would have recognized that Mr. Briem had committed no crime and was no threat to the Officers, or to anyone else.

92.    An objectively reasonable officer would have realized there was no need to use force at all and that there were clearly non-violent options for resolution.

93.    Mr. Briem is an elderly man with several health problems.

94.    Mr. Briem was not a flight risk.

95.    There was no physical way Mr. Briem could reasonably threaten or resist the much younger, stronger Officers.

96.    A reasonable Officer would have sought to de-escalate the incident and would not have used any force.

97.     The OPD Officers escalated the incident.

98.     The Officers' use of the forceful takedown was a clearly disproportionate response to anything Mr. Briem had done.

99.     As a result of Defendants' outrageous conduct, Mr. Briem has been seriously injured and damaged as set forth herein.

100.    Mr. Briem is entitled to attorney fees under 42 U.S.C. §1988.

## SECOND CAUSE OF ACTION

### ~ *State Constitutional Claims* ~
**Against Officers Genovesse and Taylor in their Individual Capacities Cognizable under Article I, Section 9 of the Utah Constitution.**

101.    Plaintiffs incorporate by reference all other paragraphs herein.

102.    Article I, Section 9 of the Utah Constitution provides protection of basic rights for its citizens against unnecessary rigor during arrest.

103.    The Utah Supreme Court has clarified the "unnecessary rigor" clause of Article 1 §9 of the Utah Constitution to "include ***being unnecessarily exposed to an increased risk of serious harm***." *Dexter v. Bosko,* 184 P.3d 592, 597 (Utah 2008) (emphasis added).

104.    Mr. Briem was physically assaulted while being detained and arrested by OPD Officers.

105.    Mr. Briem is an elderly man with serious health problems.  He was no threat to the officers.

106.   Defendants knew that Mr. Briem was not a threat or danger to themselves or anyone else.

107.   Pursuant to the unnecessary rigor clause of Article I, §9 of the Utah Constitution, Defendants had a duty to ensure that Mr. Briem was not unnecessarily exposed to an increased risk of serious harm.

108.   Any reasonable official in the position of each Defendant would have understood that pushing Mr. Briem into a wall and forcefully taking him to the ground would expose him to an increased risk of harm.

109.   Mr. Briem was unnecessarily injured when the Officers threw him to the ground.

110.   Mr. Briem suffered a flagrant violation of his rights under the Utah Constitution, Article I, §9 by defendants who subjected him to unnecessary rigor as an arrested person.

111.   Mr. Briem was not only exposed to an increased risk of serious harm, he suffered directly from it, resulting in his damages.

112.   Defendants had no reasonable justification for detaining and throwing Mr. Briem to the ground.

113.   There is no equitable relief that would adequately address Mr. Briem's loss, nor are there existing remedies that would redress Mr. Briem's injuries.

114.   As a direct and proximate result of Defendants' conduct, Mr. Briem has suffered physical injury and physical pain.

## THIRD CAUSE OF ACTION (Informational)

### ~ *Battery Against Vera Briem*~
### *Against Officer Genovesse*

115.   Plaintiffs incorporate by reference all other paragraphs herein. (This cause of action is informational until 60 days after service of the Notice of Claim.)

116.   The Utah Supreme Court has stated: "an actor is liable for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other … or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Reynolds v. MacFarlane*, 2014 UT App 57, ¶ 12, 322 P.3d 755, 759 (quoting Restatement (Second) of Torts §13 (1965)).

117.   "For the intentional tort of battery, harmful or offensive contact includes all physical contacts that the individual either expressly communicates are unwanted or those contacts to which no reasonable person would consent." *Id.*

118.   The Utah Supreme Court further clarified that "[i]t is not necessary that the plaintiff's actual body be disturbed." *Id.*

119.   Officer Genovesse battered Vera Briem when he intentionally, roughly and unnecessarily pushed her away from him.

120.   Vera Briem is a frail and elderly 75-year-old woman who walks with a cane.

121.   Officer Genovesse intended to cause and did cause harmful contact with Vera Briem.

122.    Vera Briem did not consent to be touched by Officer Genovesse and no reasonable person would have consented.

123.    As a proximate result of the conduct, Vera Briem has been damaged as stated herein.

124.    Vera Briem is entitled to damages.

## FOURTH CAUSE OF ACTION (Informational)

### ~ *Negligent Infliction of Emotional Distress-Vera Briem* ~
*Cognizable against Defendants Officer Taylor and Genovesse*

125.    Plaintiffs incorporate by reference all other paragraphs herein. (This cause of action is informational until 60 days after service of the Notice of Claim.)

126.    To support a claim of Negligent Infliction of Emotional Distress, Plaintiff must be able to demonstrate that Defendants have:

(1) Unintentionally caused emotional distress to the plaintiff;
(2) The defendant should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person;
(3) The defendant, from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm; and
(4) The emotional distress resulted in illness or bodily harm to the plaintiff.

*Candelaria v. CB Richard Ellis*, 2014 UT App 1, ¶9, 319 P.3d 708, 710-11.

127.    Furthermore, the rule applies to a third person who witnesses harm to another when "the negligence of the actor has otherwise created an unreasonable risk of

bodily harm to the other." *Harnicher. V. University of Utah Med. Ctr.,* 962 P.2d 67, 69 (Utah 1998).

128.   The Utah Supreme Court allows one to recover "who is himself or herself threatened with bodily harm in consequence of the defendant's negligence to recover for emotional distress resulting from viewing the death or serious physical injury of a member of his or her immediate family." *Id.* at 69-70.

129.   Vera Briem was in the "zone of danger."

130.   Any reasonable person would have known that watching her husband be violently arrested and forcefully taken down would cause Vera PTSD and emotional distress.

131.   The Officers were unreasonable in their handling of Mr. Briem. Mr. Briem is an elderly man who posed no threat to the Officers. The Officers had no justification for executing a forceful take down of Mr. Briem.

132.   Vera Briem was visibly terrified of the Police Officers after the incident. When approached by one Officer, Mrs. Briem backed away in terror and asked him not to come closer to her.

133.   Vera repeatedly cried out that her husband was ill and upon seeing her husband on the ground bloodied, feared he was dead.

134.   The actions of Defendants in detaining her husband took a serious mental toll on Mrs. Briem. She continues to suffer severe emotional and mental effects from Defendants' actions.

135.   In committing the acts described above, the Defendants should have known their conduct involved an unreasonable risk of causing emotional distress.

136.   As a proximate result of Defendants' actions, Vera Briem has suffered damages.

137.   Plaintiff is entitled to damages as set forth herein.

## INJURIES AND DAMAGES

138.   Plaintiffs incorporate by reference all other paragraphs herein.

139.   Rand Briem was exposed to unreasonable and unnecessary excessive force by Officers Taylor and Genovesse on November 29, 2022.

140.   As a result of their illegal use of force, Mr. Briem tore his rotator cuff and suffered other physical and emotional damages. These physical damages will require future medical care.

141.   Mr. Briem has sustained general damages, including pain and suffering.

142.   As a result of their illegal use of force, Vera Briem has suffered physical and emotional damage, including PTSD.

143.   Mrs. Briem suffered a battery by Officer Genovesse.

144.   Ogden City is also liable for the injuries and damages to Plaintiffs which were proximately caused by the actions of its employed Officers.

145.   We incorporate herein by reference all other paragraphs relating to damages.

## JURY DEMAND

Plaintiffs request a jury trial on all issues in this case.

## REQUEST FOR RELIEF

1.      For general compensatory damages in an amount to be determined at trial;

2.      For special damages, such as medical bills, as are shown at trial;

3.      For punitive damages against Defendant as may be allowed by law;

4.      For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

5.      For Plaintiffs' costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. §1988; and

6.      For such other and further relief as the Court deems just and proper.

DATED this 21st day November, 2023

SYKES MCALLISTER LAW OFFICES, PLLC

 */s/ Robert B. Sykes*
ROBERT B. SYKES
C. PETER SORENSEN
CHRISTINA D. ISOM
AMELIA M. FENN
*Attorneys for Plaintiffs*